No. 12141

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

-vs-

GILMAN RUSSELL FORSNESS,

                Defendant and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
            Honorable Robert J. Nelson, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert J. Campbell argued, Missoula, Montana.

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana.
        David Gliko, Assistant Attorney General, argued,
        Helena, Montana.
        J. Fred Bourdeau, County Attorney, Great Falls, Montana.
        Arthur Matteucci and James R. Walsh, Deputy County
        Attorneys, Great Falls, Montana.

---

                Submitted:  March 15, 1972

                Decided: MAR 2 9 1972

Filed: MAR 2 9 1972

_Thomas J. Kearney_
                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is by the defendant, Gilman Russell Forsness, who was tried and convicted for selling dangerous drugs in the eighth judicial district, county of Cascade. He appeals from the judgment.

This appeal is taken by a volunteer counsel who did not take part in the trial. The issues on appeal are narrowly directed to the activities of trial counsel. However, in order to put the case in perspective, that is, to gauge the sincerity of rather strange and strained charges on appeal we feel it necessary to set forth the background appearing in the record.

Defendant was convicted of selling dangerous drugs, LSD, marihuana, and an acid called "window pane" to his sixteen year old son Kim Forsness, who in turn peddled it to other young people in Great Falls.

At the time of his arrest defendant was 42 years of age and had been married several times. His first marriage was to Kim's mother and of this marriage there were three children, Kim 17, Nancy 15 and Suzanne 13. From the time of the divorce from Kim's mother, defendant contributed little to the support of his family and Mrs. Delores Forsness had to work to support her children. Defendant had at least one more marriage, one more child, and one more divorce at the time of his arrest.

The record reveals defendant had retired from the United States Air Force after ten years of service; that he had worked for the Federal Aviation Agency; and that he had no previous arrest record. Testimony indicates that sometime during the late 1960's defendant became involved in the "hippie movement"

and moved to San Francisco, California, where he lived in the Haight-Ashbury area. The record also indicates that the son Kim lived with his father for a period of time in San Francisco, where his father introduced him to the drug culture. Further, when Kim returned to Montana in the fall of 1970, he commenced to sell drugs to young people in that area.

At about the time Kim began selling various drugs, his mother contacted the Great Falls police informing them that she was worried about a letter Kim had received from his father concerning the drug trade. She gave the letter to the city police who at the time were investigating both her son and her ex-husband, who had appeared in Great Falls a few days previous. The next day, December 15, 1970, she gave the city police permission to search her son's room where they found marihuana, called Panama Red, and correspondence between the defendant and Kim, further involving them in the sale of drugs.

On January 4, 1971, Kim Forsness was arrested at his home. At the home several IGA money orders were found which were made out to one Bob White of San Francisco, a man defendant had directed Kim to contact to purchase drugs. After being given the Miranda warning, Kim gave a written statement to the police which involved the defendant, in that he gave and helped his son to obtain drugs to sell.

Defendant was arrested on January 8, 1971 and appeared on January 11, 1971, before Judge Nelson. At that time defendant informed Judge Nelson that he would procure private counsel, but Judge Nelson appointed Robert A. Tucker, Esq. to be his counsel until defendant procured his own attorney. On January 13, 1971, defendant appeared with Mr. Tucker before Judge Bradford and upon a motion made by Mr. Tucker defendant was sent to the

state hospital at Warm Springs, Montana, for psychiatric evalua-
tion. In mid-February 1971, he was returned to Cascade County,
along with an evaluation report which indicated he could stand
trial.

Due to defendants allegations that he was not given com-
petent counsel, we will detail his pretrial activities. On
February 24, 1971, counsel filed a motion to dismiss with brief,
which was denied; on March 2, 1971, defendant, with counsel,
appeared before Judge Bradford and was granted a continuance on
arraignment and on that same day Judge Bradford set trial for
April 5, 1971;  on March 5, 1971, defendant disqualified Judge
Bradford and Judge Hatfield was called in and on that same day
a motion to dismiss was filed before Judge Hatfield; on March 8,
1971, counsel Tucker filed a motion to withdraw as counsel,
which was granted.  The court then appointed Gregory H. Warner,
Esq. to represent defendant who approved both the withdrawal of
Tucker and the appointment of Warner; on March 30, 1971, the
trial date of April 5, 1971, was vacated and reset for May 4,
1971; On April 16, 1971, because of a conflict in trial dates,
Judge Hatfield was relieved of the case and Judge Nelson accepted
jurisdiction;  on April 23, 1971, defendant appeared with counsel
Warner, who filed and argued a motion to dismiss and on that
same date preliminary instructions were settled for the case;
on April 26, 1971, defendant appeared before Judge Nelson, with
counsel, and heard the judge deny all motions.  Upon being requested
to enter a plea, defendant declined and a plea of not guilty was
entered by the court; on April 29, 1971, the court granted the
state's motion to add certain witnesses; and on May 4, 1971, the
case finally went to trial.

On May 4, 1971, prior to the commencement of the trial, defendant's counsel, Warner, asked to withdraw and that a new counsel be obtained because defendant had requested that he withdraw. The court denied the request and the case went to the jury, resulting in defendant's conviction. It should be noted here that in addition to counsel Gregory H. Warner, Esq. a young practioner, defendant had at the counsel table Donald L. Ostrem, Esq., who has practiced law a number of years in state and federal trial courts.

Two issues are presented by defendant for review:

1. Did the trial court err in refusing to accept the withdrawal of counsel after discharge by the defendant?

2. Did the district court violate the due process clause of the Fourteenth Amendment to the United States Constitution by forcing the defendant to trial with a court appointed counsel, which counsel defendant had discharged and who did not have the confidence of the accused?

We find no merit to defendant's first issue. Here the defendant, who in early January 1971, said he would obtain his own counsel but did not do so, has had four lawyers represent him up to and including this appeal. Mr. Tucker lasted the first two months; Mr. Warner entered the case in mid-March and went through the trial; Mr. Ostrem participated in the trial assisting Mr. Warner; and Mr. Campbell who appears as a volunteer on appeal. Procedurally, Mr. Warner and Mr. Tucker delayed arraignment from January until April 26, knowing from late March that trial was set for May 4. Discharge of his counsel on May 3, the day before trial, for the following reasons was not sufficient to delay the trial. Defendant stated:

"For the record, I would like it to show that I
refuse counsel because the efforts he has made
have not been in my best interest. Furthermore
I have been held incommunicado for four months.
I have been disallowed to make four calls. I
have not been allowed that opportunity, sir.

"* * *Sir, may I state that you are denying me
my right to call a lawyer of my choice."

The trial judge refused to discharge counsel at this
late date.

The charges contained in defendant's statement dehors
the record. As a matter of fact, the record reveals that the
trial judge and various counsel gave the defendant every oppor-
tunity to present his case. Defendant's only claim, really,
is that he could not have counsel of his choice.

The second issue for review is concerned with the alleged
violation of the due process clause of the Fourteenth Amendment
to the United States Constitution. Defendant argues that his
right to counsel as an indigent necessarily incorporates his
right to effective counsel. He alleges that when the appearance
of counsel takes on the cloak of pro forma rather than that of
zeal and action, he was denied his day in court. Wilson v. State,
222 Ind. 63, 51 N.E.2d 848; Hawkins v. State, (Fla.1966), 184
So.2d 486; Smotherman v. Beto, 276 F.Supp. 579.

Here, in effect, defendant in using the words "effective
counsel" and one that he has "confidence in", is alleging that
he had inadequate counsel. We find the record does not support
this allegation. We have noted in detail the efforts of two de-
fense counsel on his behalf. Claimed inadequacy of counsel must
not be tested by a greater sophistication of appellate counsel,

nor by that counsel's unrivaled opportunity to study the record at leisure and cite different tactics of perhaps doubtful efficacy. Success is not the test of efficient counsel, frequently neither vigor, zeal, nor skill can overcome the truth.

We agree with counsel for defendant that the right to be represented by counsel in a criminal proceeding is a fundamental right essential to criminal justice. State v. Schenk, 151 Mont. 493, 444 P.2d 861; State v. Gray, 152 Mont. 310, 448 P.2d 744; State v. Noller, 142 Mont. 35, 381 P.2d 293. However, we do not agree with defendant's contention that he can dismiss his counsel just before going to trial, after counsel had adequately represented him for several months, and then on appeal allege his basic constitutional rights have been violated. Several recent federal cases have covered this argument fully. United States v. Davis, 365 F.2d 251; Davis v. Stevens, 326 F.Supp. 1182, 1183. In the latter case, which cited United States v. Davis, the court said:

> "Nonetheless, while this right to counsel includes the right of an indigent defendant to have counsel appointed for his benefit free of charge to him, Gideon v. Wainwright, supra, it never has been held that this right to counsel also comprehends a right of an indigent defendant to have counsel of his choice appointed for him. Rather, it is the duty of the court to appoint counsel for the indigent defendant, and unless there is good cause shown why the appointment of a particular attorney should not have been made, the defendant must accept the attorney selected by the court unless he waives the right to be represented by counsel. This proposition of law is supported by numerous cases. [Citing Cases]"

The judgment of the district court is affirmed.

_____
                    Associate Justice

We Concur:

_[signature]_
Chief Justice

_[signature]_

_[signature]_
Associate Justices.

Mr. Justice Haswell specially concurring:

I concur in the result but not all that is said in the foregoing opinion.

_[signature]_
Associate Justice