No. 12785

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

THE STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

JOHN GRADY,

    Defendant and Appellant.

---

Appeal from:   District Court of the Thirteenth Judicial District,
               Honorable Robert Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        John L. Adams, Jr. argued, Billings, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
         Montana
        Thomas A. Budewitz, Assistant Attorney General,
         argued, Helena, Montana
        Harold F. Hanser, County Attorney, Billings, Montana
        Charles A. Bradley, Deputy County Attorney, Billings,
         Montana

---

                              Submitted:   January 17, 1975

                              Decided:
                                          FEB - 7 1975
Filed: FEB - 7 1975


                        _Thomas J. Kearney_
                                    Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by defendant from a judgment of the district court, Yellowstone County, rendered upon a jury verdict convicting him of the crime of assault in the second degree.

Early in the morning of September 22, 1973, officers Knutsen and Jones of the Billings Police Department responded to a complaint that a shooting had occurred in a residential area of Billings. Upon their arrival at the scene, they discovered one Calvin "Bubbles" White had been severely wounded by gunfire and was being helped into his car by Mr. and Mrs. Bill Foster. Immediately upon the discovery that a shooting had occurred, Officer Jones inquired as to who had done the shooting; Foster replied with words to the effect that "John Grady did it". The officers radioed to other patrol cars that the suspect was John Grady and allowed the Fosters to drive the victim to the hospital.

Amelio Martinez testified that she was awakened by a shot and looked out the window of her house, which was across the street from Bubbles' house. She observed Mr. and Mrs. Foster standing on the driver's side of Bubbles' car apparently trying to help him get in. She then saw a car come down the street with its lights off, make a U-turn and then stop. She testified that at this point a man got out of this car on the passenger side and a shot was fired, which she thought was into the air. She testified that a second shot was then fired which caused Bubbles to fall to the ground.

Roberta Aquilar testified that she was awakened by the sound of loud talking. She heard one shot and, from the window of her house approximately one-third of a block or 100 feet from the activity, saw three or four other shots. She observed Bubbles lying down, probably on the sidewalk. Bubbles then got up and,

while he was being helped into his car by the Fosters, a blue Buick proceeded down the street with its lights off. She stated that the Buick stopped and more shots were fired, about five she thought. The car then left, made a U-turn and came back. She then called the police. The officers arrived approximately five minutes thereafter. Over objection Mrs. Aquilar was permitted to testify that when the police arrived, she heard, through her open window, the police ask Mr. Foster if he knew who had shot Mr. White and that "Mr. Foster said it was John Grady." The Court allowed the witness to answer the question but cautioned the jury that it was "allowing the answer only for the purpose of establishing the fact that this statement was made, not for the purpose of showing the truth or falsity of the statement itself."

On direct examination of Officer Knutsen, this transpired:

"Q. Now when you arrived did you ask Mr. White and Mr. Foster who had done the shooting?

"MR. ADAMS: Object to this, Your Honor, on the grounds it violates the Rules of Hearsay, no proper foundation for its admission has been laid. Further on the grounds that it violates the Rules of Confrontation.

"THE COURT: Overruled, I am going to allow the witness to answer but again I caution the Jury don't allow the answer to affect your determination of guilt or innocence of this defendant. It's only for the purpose of establishing the sequence of events.

"MR. ADAMS: If your Honor please, May I have an exception to the ruling so I am not waiving my objection?

"THE COURT: Yes, you may have a continuing objection.

"A. I did not ask them, Officer Jones asked them who had done the shooting.

"Q. Did anyone reply to Officer Jones' question? A. Yes, sir, Bill Foster did.

"Q. And what did he reply? A. He stated that John Grady had shot him.

" * * *

"A. I put out to local cars that one of the
witnesses at the scene had stated that John Grady
had done the shooting and that John Grady owned a
'65 Buick, white over blue four door. At the
time I had the license place number written down
in my notes and I do not recall what it was today.

"Q. Did you put out the license number too? A.
Yes, sir, I did."

On direct examination of Officer Jones, this was elicited:

"A. * * * So I turned back to William Foster who
had run around and started to get into the driver's
side and I said, 'Who shot Bubbles?' and he said,
'John Grady, John shot Bubbles.'"

And on cross-examination:

"Q. What about Sally Foster, did she say anything?
A. Yes, she did.

"Q. What did she say? A. She said that John Grady
shot Bubbles.

"Q. Then both her and her husband volunteered this?
A. No, I asked them and then they came right out--

"Q. Did you specifically ask each of them individ-
ually? A. There was a lot of excitement there and
I said, 'Who shot him?' and Mr. Foster said, 'John
Grady did.' And then they got in the car and took
off and I stayed at the scene and Mrs. Foster was
there and I asked her, 'Now who did you see shoot-
ing?' And she said, 'I saw John and Carolyn and
they were shooting at him.'"

Officer Wong of the Billings Police Department testified

that he and Officer Spoerl were downtown in a patrol car and

heard a dispatch that a shooting had occurred and the suspect in

the shooting was put over the air as John Grady, driving a white

over blue Buick. Officer Wong then described the observation of

a car which they thought might be the suspect vehicle, the de-

tails of their pursuit of that vehicle and, their following the

vehicle into a cornfield where John Grady and Carolyn Grady were

arrested.

After the prosecution had rested the district court, in

chambers, informed defendant that he was not required to take

the stand that, if he did not take the stand and testify in his

own behalf, no comment as to that could be made by the county attorney in any way. That the State was obligated to prove the charge beyond a reasonable doubt even though he did not testify and that, on the other hand, he did have the right to testify on his own behalf but would be subject to the same type of cross-examination as any other witness. After having been so informed and after conferring privately with his counsel, defendant elected to testify. The testimony of defendant, both on direct and cross-examination, is replete with admissions that he got out of his car and shot at the group of people in front of Bubbles White's house that night. Defendant, however, states that he shot only in self-defense, his car having been fired upon as he drove down the street. He then stopped the car at the intersection, got out of the car, walked around the car fully exposed to the person or persons who were firing upon him. This testimony on cross-examination fairly summarizes his testimony:

> "Q. Then what did you do? A. I went back to the side of my car to where I could look over and some more shots come and I fired a warning shot, I fired in the air and then I had to duck.
>
> " * * *
>
> "Q. All right now, you are out of the car with the shotgun, you fire once in the air. Who did you shoot at the second time you fired the shotgun? A. I just fired in the vicinity of the crowd that--but low--I wasn't trying to hurt anybody.
>
> " * * *
>
> "Q. How many times did you shoot at these three people standing there on the sidewalk with the shotgun? A. I believe it might have been twice. It might have been once. I don't know.
>
> " * * *
>
> "Q. Now you have shot once in the air, twice at the people over here with the shot gun, once into the car and you put the shotgun away. A. Yes.
>
> "Q. Did you see whether or not you had hit anybody

when you shot them with the shotgun? A. No,
I did not because I was fired upon again.

" * * *

"Q. So now you were fired upon again. A.
Yes.

"Q. Okay, and this time how did you get the
automatic rifle or semi-automatic rifle out?
A. I take it out of the back seat.

" * * *

"Q. Okay, now how many shots did you fire with
the rifle? A. First shot I fired with the rifle
was right here in front of the car and I wasn't--

"Q. That's the one that hit the cement? A. Yes.

"Q. Where was the second shot with the rifle?
A. It was fired towards the person nearest to
the end over here, it turned out to be Calvin
White."

The State's case was without the testimony of Calvin White, the injured party, and without the testimony of William and Sally Foster, two persons actually at the scene at the time of the shooting.

John Grady was arrested and charged with the crime of assault in the first degree, a felony under former section 94-601, R.C.M. 1947, then in effect. The jury returned a verdict of guilty of the crime of assault in the second degree. Thereupon, defendant was sentenced to a term of six years in the Montana State Prison.

Defendant appeals from that conviction and presents two issues: (1) Whether the district court's admission of the hearsay testimony of the State's witnesses that defendant was the assailant is reversible error?

(2) Whether the failure of the State to produce certain witnesses, who may have been direct participants in the affray, established the defense of self-defense and precluded defendant from being convicted of the crime of assault? We answer each

- 6 -

question in the negative and affirm the judgment of the district court.

With respect to the first issue, defendant's position is stated in these two sentences taken from his brief to this Court:

> "Briefly stated, it is felt that conviction might not have been had if the defendant had not elected to testify and admit that he had fired certain shots that evening at Mr. White, using both a rifle and a shotgun * * *. Mr. Grady voluntarily assumed the stand but primarily his reasons for assuming the stand were predicated on the hearsay introduced in the case in chief * * *."

Because of the view we take of this appeal, we do not examine the issue of whether the admission of the testimony to the effect that "John Grady did it" was error. Section 95-2425, R.C.M. 1947, provides:

> "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

It is often said that the object of a trial is a search for the truth. Defendant voluntarily assumed the stand. His admissions in his testimony clearly establish beyond a reasonable doubt that he was the person firing at "Bubbles" White on the night in question. Thus the error, if any, in admitting the testimony that "John Grady did it" when viewed in light of the testimony as a whole, did not affect the substantial rights of defendant and is properly disregarded.

Admitting for the moment the State's testimony that "John Grady did it" may have prompted defendant to take the stand, although the record does not show this, such fact does not entitle defendant to have his testimony disregarded should error be found. Defendant apparently asks this Court to establish a rule of law which would allow the defendant to enumerate every conceivable specification of error he could think of and state that because of such error he was compelled to take the stand in

his own behalf. Then, upon appeal, if this Court found that any of those specifications of error had merit, the defendant would be entitled to have his testimony disregarded. This Court will not establish such a rule of law.

Defendant's second issue may be summarily answered. He contends that by his plea of self-defense he had in effect admitted the doing of certain acts; that the prosecution should then have been compelled to present the witnesses, namely "Bubbles" White and the Fosters, to vitiate such plea, and that since none of the evidence presented by the State could vitiate the plea, it should be deemed established and the district court should have directed a verdict of acquittal. The law in Montana is that although the burden of persuasion remains on the State, in order to avail himself of the affirmative defense of self-defense, the defendant has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt. State v. Leakey, 44 Mont. 354, 366, 120 P. 234; State v. Powell, 54 Mont. 217, 220, 169 P. 46.

The judgment is affirmed.

_Wesley Castles_
Justice

We concur:

_____
Chief Justice

_John Conway Harrison_
_____

_____
Justices

- 8 -

Mr. Justice Frank I. Haswell and Mr. Justice Gene B. Daly specially concurring:

We concur in affirming the conviction, but feel the majority opinion contains an error of law to which this special concurring opinion is directed.

The defendant contends that he was prejudiced "by the Court's allowing the hearsay testimony of Officer Knutson that the defendant was the assailant". The majority hold the admission of this testimony "harmless error". In our view, the admission of this testimony is no error at all as the testimony is clearly admissible.

The testimony of Officer Knutson that upon his arrival at the scene of the shooting Mr. Foster stated that defendant had shot the victim is admissible as a "verbal act", a well recognized exception to the hearsay rule. See Wharton's Criminal Evidence, 13th Ed., Vol. 2, Sec. 274. The fact the statement was made, irrespective of its truth or falsity, is relevant. It serves to show the sequence of events immediately following the shooting; in particular it explains why police activity had focused on defendant and why police subsequently apprehended him. Without this information, the jury would be left in the dark concerning the chase and subsequent arrest of defendant.

Judge Wilson clearly limited the testimony to this purpose:

> "Overruled, I am going to allow the witness to answer but again I caution the Jury don't allow the answer to affect your determination of guilt or innocence of this defendant. It's only for the purpose of establishing the sequence of events."

Hence, the testimony was clearly admissible; no error was committed; and the "harmless error" rule is not involved.

_____

_____
                          Justices

- 9 -