No. 14714

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

THE STATE OF MONTANA,

        Plaintiff and Respondent,

    vs.

DANIEL HERMAN LOPEZ,

        Defendant and Appellant.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        A. Michael Salvagni, Bozeman, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Donald White, County Attorney, Bozeman, Montana

Submitted on briefs: October 4, 1979

Decided: JAN 1

Filed: JAN

Thomas J. Kearney
_____ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by defendant-appellant, Daniel H. Lopez, from a judgment of the District Court of the Eighteenth Judicial District, Gallatin County, the Honorable W. W. Lessley presiding, rendered upon a jury verdict convicting him of aggravated assault and attempted theft.

The defendant was sentenced to the state prison for twenty years on aggravated assault and ten years on attempted theft, the sentences to run concurrently. The District Court designated defendant a dangerous offender.

According to both defendant Lopez and the victim, Steven A. Wiscombe, there was an early morning encounter between the two men near the Durston Road, west of Bozeman, Montana, on July 11, 1978. The testimony as to the circumstances of this encounter is contradictory.

Wiscombe testified that he arrived in Bozeman after midnight and decided against staying in a motel. He, therefore, drove out of town, found an accommodating spot and went to sleep in his sleeping bag.

Wiscombe was awakened by defendant shaking him, beating him with a rock, swearing, and demanding Wiscombe's car keys. A struggle ensued in which defendant Lopez lost his glasses but obtained the car keys. Lopez attempted to drive away in the car, but Wiscombe grabbed a door handle and broke a side window, causing Lopez to swerve off the road. The men scuffled over the car keys, and the confrontation ended when Lopez fled. Wiscombe returned to his sleeping spot where he picked up his belongings and Lopez's shaving kit. He then drove to Bozeman Deaconess Hospital where he was treated and hospitalized for three days with head and face lacerations, a small fracture of the skull and possible

nerve damage. Defendant Lopez was linked to the incident by the finding of his glasses and bike at the scene and by fingerprints on a tube of toothpaste from his shaving kit which Wiscombe had picked up.

Lopez, on the other hand, testified that Wiscombe attempted to run him off the road and that he fell into a ditch and lost his glasses. He stated that as he was climbing out of the ditch to the roadway, he threw a rock at Wiscombe to stop him from advancing on the defendant. Lopez contends he did not intend to hurt Wiscombe but was only trying to defend himself.

In an attempt to get away, Lopez testified he jumped into the car and tried to take off. Wiscombe then broke the side window and caused Lopez to drive into the ditch. Lopez stated he could not get out on the driver's side because Wiscombe had a rock in his hand and had expressed intentions of killing Lopez. Lopez then crossed the console, exited through the passenger door and fled across a field. He was arrested near the scene of the incident at approximately 7:20 a.m. the same morning.

Lopez appeals his convictions of aggravated assault and attempted theft contending that he was denied effective assistance of counsel. Further, defendant complains that the sentence imposed by the District Court was based upon a prejudicial presentence report and therefore was improper.

Two issues are presented for this Court's review:

1. Was defendant denied a fair trial because he did not receive adequate and effective assistance of counsel?

2. Was the sentence imposed by the District Court proper?

In recent years this Court has addressed the issue of adequate assistance of counsel on a number of occasions. See State v. Maldonado (1978), ____ Mont. ____, 578 P.2d 296, 35 St.Rep. 420; State v. Miller (1977), ___ Mont. ___, 568 P.2d 130, 34 St.Rep. 838; State v. Brooks (1976), 171 Mont. 45, 554 P.2d 753; State v. McElveen (1975), 168 Mont. 500, 544 P.2d 820. These cases have consistently recognized the accused's right to counsel as required by the Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24, of the 1972 Montana Constitution. It is undisputed that this right to counsel encompasses the right to effective assistance of counsel. State v. McElveen, 544 P.2d at 821, 822.

To determine the adequacy of defendant's counsel this Court uses the "farce and sham" test. State v. Noller (1963), 142 Mont. 35, 381 P.2d 293, 294. This test states:

> ". . . [To] prevail on a claim of constitutionally inadequate representation, a defendant must meet the burden of proving his counsel's performance was so woefully inadequate as to shock the conscience of the court and make the resultant proceeding a farce and mockery of justice." State v. Miller, 568 P.2d at 132. (Citations omitted.)

In applying the test this Court ruled:

> "To determine the adequacy of the representation, we must look at the services rendered by appointed counsel in the context of the reasoning set forth by Justice John C. Harrison in State v. Forsness 159 Mont. 105, 110, 495 P.2d 176, 178:

> "'Claimed inadequacy of counsel must not be tested by a greater sophistication of appellate counsel, nor by that counsel's unrivaled opportunity to study the record at leisure and cite different tactics of perhaps doubtful efficacy. Success is not the test of efficient counsel, frequently neither vigor, zeal, nor skill can overcome the truth.'" State v. McElveen, 544 P.2d at 822.

Further, in Williams v. Beto (5th Cir. 1965), 354 F.2d 698, 706, the court stated:

-4-

". . . the fact that some other lawyer followed
a different course in another case, or would have
done differently had he been acting as counsel,
is no ground for branding the appointed attorney
with the opprobrium of ineffectiveness, or in-
fidelity, or incompetency.  The practice of law
is an art as well as a science.  As no two men
can be exactly alike in the practice of the pro-
fession, it is basically unreasonable to judge
an attorney by what another would have done, or
says he would have done, in the better light of
hindsight. . ."  (Citations omitted.)

With the guidance of these general principles, we examine the allegations of defendant concerning his counsel's ineffectiveness.  Defendant cites three alleged mistakes by counsel and the District Court at trial, the cumulative effect of which he contends deprived him of a fair trial.  We discuss these "mistakes" in the order defendant raises them on appeal.

The first "mistake" was the failure by the District Court to remove defense counsel, Larry Moran, on defendant's objection following the submission of an affidavit by Mr. Moran on the morning of trial.  This affidavit stated in effect that Mr. Moran was getting no cooperation from defendant in terms of preparing a defense and would be able to do little at trial other than sit at the counsel table.  Despite this affidavit, the District Court proceeded to trial, and Mr. Moran continued to represent defendant.  Defendant contends it was error not to remove Mr. Moran on defendant's objection.  We disagree.

It is true that Mr. Moran, by his affidavit, stated he would have difficulty in representing the defendant.  Mr. Moran, however, also stated for the record that he would ". . . proceed as far as I am able.  I have never shirked my responsibility for duty as a public defender.  I'll give whatever I can on behalf of Mr. Lopez."  By this statement,

Mr. Moran indicated that he would represent defendant to the best of his ability in spite of defendant's refusal to cooperate in the preparation of the defense. Mr. Moran was appointed to represent defendant approximately three weeks before the trial. Apparently, this lack of communication existed throughout this period. Defendant, however, failed to request different counsel until the morning of trial. He continued to object throughout the trial to having Mr. Moran represent him.

> "Although the attorney client relationship is ordinarily a private matter, a defendant does not have the unbridled right to discharge counsel on the eve of trial." State v. Miller, supra, 568 P.2d at 132. (Citations omitted.)

Furthermore,

> ". . . while this right to counsel includes the right of an indigent defendant to have counsel appointed for his benefit free of charge to him . . . it never has been held that this right to counsel also comprehends a right of an indigent defendant to have counsel of his choice appointed for him. Rather, it is the duty of the court to appoint counsel for the indigent defendant, and unless there is good cause shown why the appointment of a particular attorney should not have been made, the defendant must accept the attorney selected by the court unless he waives the right to be represented by counsel. This proposition of law is supported by numerous cases." State v. Forsness, supra, 495 P.2d at 179. (Citations omitted.)

Counsel here did the best he could under the circumstances. The District Court on two occasions expressed confidence in Mr. Moran's abilities, and a careful reading of the transcript indicates that the defense provided was adequate. Apparently Mr. Moran filed his affidavit solely because defendant refused to participate in the preparation of his defense. It is a general rule that a party who participates in or contributes to an error cannot complain of it. State v. Miller, 568 P.2d at 132. We find no merit in defendant's allegation.

The second "mistake" according to defendant was two-fold. It involved the inference on two separate occasions that defendant may have had a prior conviction on his record. The first occurred during the voir dire of the jury when defense counsel Moran stated: ". . . There may be evidence in this case of a prior conviction of this defendant. If that does, in fact, come into evidence, will any of you assume guilt in this case?" The second occurred when the State was attempting to introduce into evidence defendant's glasses. The following colloquy took place:

> "BY MR. WHITE: (County Attorney)
>
> "Q. And, may I have the glasses? Can I borrow them just for a second? And, I hand you what has been marked State's Exhibit 6. Can you identify these? A. Yes, these are the glasses which I found in the ditch, then.
>
> "Q. And, you took them and placed them in the bag in which they were contained? A. Yes, I did.
>
> "Q. That would be only in your possession since that time? A. I mailed them to the State Identification Bureau in Helena where Phil Conover checked them for fingerprints, and he returned them to me, and then I mailed them to the State Prison where they attempted to identify them, and they returned them to me.
>
> "MR. WHITE: I would offer into evidence State's 6, your Honor.
>
> "MR. MORAN: No objection, your Honor."

Although defendant concedes that no actual evidence of prior convictions was introduced, he argues that the above references to prior convictions were prejudicial.

While we question the propriety of defense counsel's voir dire question, the facts of this case do not indicate that defendant was prejudiced. When this question was asked, Judge Lessley immediately stated: "There will be no evidence of the prior conviction in this cause." The record indicates no such evidence was introduced.

-7-

The jury was instructed that they were to be governed solely by the evidence introduced at trial and the law as stated by the judge. There is nothing here to indicate that the jury disregarded that instruction to defendant's prejudice.

Further, there is nothing in the chain of custody colloquy which placed into the record evidence of a prior conviction. The fact that a defendant admittedly has suffered a prior felony conviction is not error. These vague references then, if error, are not reversible error; however, we would condemn this kind of tactic in the future.

Finally, defendant argues that counsel's failure to object to a self-defense instruction offered by the State deprived him of a fair trial. The instruction stated:

> "You are instructed that the defense of justifiable use of force or self-defense is an affirmative defense and the defendant has the burden of proving self-defense to raise a reasonable doubt of his guilt."

Defendant submits that this instruction is a misstatement of the law and is prejudicial because it appears to shift the burden of proof to the defendant.

Recently, in State v. Cooper (1979), ___ Mont. ____, 589 P.2d 133, 36 St.Rep. 30, this Court reaffirmed the general rule in Montana regarding jury instructions on self-defense. Quoting State v. Grady (1975), 166 Mont. 168, 531 P.2d 681, we stated:

> "'The law in Montana is that although the burden of persuasion remains on the State, in order to avail himself of the affirmative defense of self-defense, the defendant has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt.'" 589 P.2d at 136.

In Cooper we tacitly rejected an argument by the Montana County Attorneys Association that a defendant should be

required to prove his affirmative defense by a preponderance of the evidence. Arguments similar to the one by defendant here were rejected by this Court in Cooper. Although Cooper dealt with a slightly milder instruction than the one presented here, we reach the same result.

At first glance defendant appears to raise an issue similar to that raised in Sandstrom v. Montana (1979), ___ U. S. ____, 99 S.Ct. 2450, 61 L.Ed.2d 39. This case, however, is easily distinguished from Sandstrom with the help of two other United States Supreme Court cases, Patterson v. New York (1977), 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281, and Leland v. Oregon (1952), 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302.

Patterson was concerned with the constitutionality under the Due Process Clause of burdening the defendant in a New York murder trial with proving extreme emotional disturbance as defined by New York law. The United States Supreme Court ruled that requiring the defendant to prove his affirmative defense by a preponderance of the evidence did not violate due process and stated:

> ". . . the universal rule in this country was
> that the prosecution must prove guilt beyond a
> reasonable doubt. At the same time, the long-
> accepted rule was that it was constitutionally
> permissible to provide that various affirmative
> defenses were to be proved by the defendant.
> This did not lead to such abuses or to such wide-
> spread redefinition of crime and reduction of the
> prosecution's burden that a new constitutional
> rule was required . . . Nor does the fact that a
> majority of the States have now assumed the bur-
> den of disproving affirmative defenses--for what-
> ever reasons--mean that those States that strike
> a different balance are in violation of the Con-
> stitution." Patterson, 53 L.Ed.2d at 292-93.

In Leland the defendant raised the affirmative defense of insanity which, by Oregon state statutes, he was required to prove. One of the statutes in question provided: "'When

the commission of the act charged as a crime is proven, and the defense sought to be established is the insanity of the defendant, the same must be proven beyond a reasonable doubt'. . ." 343 U.S. at 792. The defendant there argued that the statute in question, in effect, required a defendant pleading insanity to establish his innocence by disproving beyond a reasonable doubt elements of the crime necessary to a verdict of guilty and therefore violated due process of law. To determine the merits of this challenge, the Court ruled that the statute must be viewed in its relation to other relevant Oregon law and in its place in the trial of the case. On reviewing all the instructions in the case, the Court stated:

> ". . . Although a plea of insanity was made, the prosecution was required to prove beyond a reasonable doubt every element of the crime charged, including, in the case of first degree murder, premeditation, deliberation, malice and intent. The trial court repeatedly emphasized this requirement in its charge to the jury. . . These and other instructions, and the charge as a whole, make it clear that the burden of proof of guilt, and of all the necessary elements of guilt, was placed squarely upon the State. As the jury was told, this burden did not shift, but rested upon the State throughout the trial, just as, according to the instructions, appellant was presumed to be innocent until the jury was convinced beyond a reasonable doubt that he was guilty. The jurors were to consider separately the issue of legal sanity per se--an issue set apart from the crime charged . . ." 343 U.S. at 794-796.

A review of the instructions given in the instant case, in light of the holdings in Patterson and Leland, reveals that the burden of proof did not shift to defendant. Time and again the jury was instructed that the defendant was presumed to be innocent and that the State must prove the defendant's guilt beyond a reasonable doubt.

-10-

The contested instruction here, while worded a little stronger than the self-defense instruction this Court favors, did not have the effect of shifting the burden of proof from the State to the defendant. The use of the instruction, therefore, did not deprive the defendant of a fair trial and failure to object to the instruction was not ineffective representation. While the instruction was not improper in light of the facts in this case, we reaffirm our holding in State v. Cooper, supra, and urge that the self-defense instruction approved in that case be used in all criminal cases involving an issue of self-defense.

The second issue raised by defendant is whether the sentence imposed by the District Court was proper.

Defendant first contends that the presentence report does not comply with applicable statutory law because it does not consider the needs and potentialities of the defendant, nor does it consider any aspects of rehabilitation.

This complaint is burdened with the sins of omission and does not deserve discussion. Judge Lessley held a dispositional hearing and at the outset told defendant that there would be no rules of evidence, etc., unless defense objected so that they could get in anything they wanted and not be hampered by formal requirements. Defendant had copies of the presentence report, psychological reports, and was able to cross-examine the author of the presentence report. There were many, many witnesses--lay, doctor, and religious--who testified for the defendant for a total hearing of 84 pages of transcript. We cannot conceive of any way this hearing could have been conducted more fairly. See State v. Metz (1979), _____ Mont. _____, _____ P.2d _____, 36 St.Rep. _____ (Cause No. 14682, decided December 19, 1979).

Defendant further asserts that he has been convicted of only one violent offense--rape in Missoula in 1969. It is apparent that defendant failed to take into account that he had also been convicted of the present offense--aggravated assault. The District Court's finding was therefore not erroneous.

The judgment of the District Court is affirmed.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____
               Justices

Mr. Justice Daniel J. Shea dissenting:

I would reverse the judgment and grant a new trial. In doing so, I must state that I would first have to adopt a different standard than the "farce or sham" test which is the rule in this State. A defendant is not simply entitled to counsel, he is entitled to competent counsel. A "farce or sham" test seems to be judged in essence by the mere fact that the defendant had counsel and that his performance did not shock the conscience of the court.

The case must be approached from the special circumstances existing here. The prosecuting witness Wiscombe testified that the defendant assaulted him; the defendant testified that he did not assault Wiscombe, rather, Wiscombe assaulted him, and that was acting in self defense. The remaining physical evidence corroborated neither story. Thus, the jury was presented with a clear question of credibility.

Needless to say, the fact that the defendant had been previously convicted of a felony, even though the jury did not know what that felony was, could have had a strong impact on the jury. The voir dire question by defense counsel obviously was meant to take the string out of any evidence introduced establishing that defendant had been previously convicted of a felony. And the trial judge's comment in relation to the question by defense counsel served only to emphasize that the defendant did in fact have a previous felony record. The trial court immediately responded to the voir dire question asked by defense counsel: "There will be no evidence of the prior conviction in this cause." (Emphasis added.)

Surely the jury knew by this comment of the trial judge that the defendant in fact had a previous conviction. And

-13-

when the witness added that the glasses, alleged to be, and established to be those of the defendant, were sent to the state prison for identification, the jury had no doubt that the defendant had a previous felony conviction for which he was sent to prison. They could conclude therefore that it was most likely a serious offense. Under these circumstances, defense counsel's question, in conjunction with the trial court's response and the witness's statement that he had sent the glasses to the state prison for identification, could well have been an important and inappropriate factor in the jury's decision to believe Wiscombe rather that the defendant.

I would, therefore, reverse the conviction and grant a new trial.

_____
Justice