No. 98-400

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 204

295 Mont. 457

984 P.2d 157

---

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JODY LYNN LONGSTRETH,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable John Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brian P. Fay, Angel Law Firm; Bozeman, Montana

Jennifer Wendt Bordy, Attorney at Law; Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Marty Lambert, Gallatin County Attorney; Todd Whipple,

Deputy County Attorney; Bozeman, Montana

For Amicus:

Scott Albers, Attorney at Law; Great Falls, Montana

Submitted on Briefs: May 27, 1999

Decided: August 31, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

- ¶Jody Lynn Longstreth was charged by information in the Eighteenth Judicial District, Gallatin County, with deliberate homicide for stabbing her boyfriend during an argument and causing his death. During a jury trial, she relied on the affirmative defense of justifiable use of force. However, on March 5, 1998, the jury convicted her of the lesser-included offense of negligent homicide. She appeals from several of the court's rulings. We affirm.
- ¶The following issues are raised in this appeal:
- ¶1. Did the District Court's instructions on justifiable use of force deny Longstreth her right to due process?
- ¶2. Did the District Court err when it denied Longstreth's motion for a directed verdict?

FACTUAL BACKGROUND

- ¶On December 19, 1997, Longstreth was charged by information with the crime of deliberate homicide, in violation of § 45-5-102, MCA. The State alleged that she killed Johnny Lee Tudor on December 14, 1997, by stabbing him with a knife.
- ¶Longstreth and Tudor were living together for approximately two years, during which time Tudor was twice convicted of partner assault as a result of physically abusing Longstreth. The abuse followed a general pattern in which Tudor would assault Longstreth physically after he became intoxicated. The evidence established that Longstreth suffered physical injuries on several occasions. As a result, Longstreth would temporarily move in with friends, but always return to live with Tudor.
- ¶On the evening of the stabbing, Longstreth and Tudor were arguing at a bar. Tudor was intoxicated. At about 8:30 p.m., they left the bar together;

however, Tudor proceeded to another bar while Longstreth drove home to the trailer where they lived. At home, Longstreth made herself a rum-and-coke and watched a movie. She testified that she kept her boots on and her keys in her pocket in case Tudor caused a problem when he came home. Tudor arrived home by taxi between 9:15 and 9:30 p.m., and immediately went to bed. Approximately 15 minutes later, Longstreth looked into the bedroom, saw Tudor lying on the bed, and returned to the living room. Ten minutes later, Tudor came into the living room, began screaming at Longstreth and threw couch cushions at her. Then, he went back to bed. Longstreth sat down at the kitchen table to work on a crossword puzzle. While she was sitting there, Tudor allegedly came into the kitchen and hit her. According to Longstreth, she tried to escape from the kitchen but Tudor blocked her. She testified that out of fear she grabbed a butcher knife and held it out at arm's length. She thought that by seeing the knife Tudor would back off. Instead, she testified, Tudor came forward and walked into the knife. Longstreth further testified that Tudor then backed off, turned toward the living room, fell down, got back up, walked toward her again, then turned toward the phone. Longstreth said she assumed Tudor would call for help.

○ ¶After she wiped off the knife, she took it with her and she left the trailer and drove to a bar where she contacted an acquaintance. The acquaintance drove her to his residence.

○ ¶At the acquaintance's residence, Longstreth made several telephone calls, including two to the Bozeman police in which she used the name "Sarah Parker." In her first call, which she made at 11:38 p.m., she reported a domestic disturbance at the trailer, but she did not identify the trailer as theirs. In her second call, she asked the police if everything was okay at the trailer. She did not request medical assistance for Tudor in either call.

○ ¶Two police officers were dispatched to the trailer, where they found Tudor dead on the floor wearing only underwear with a stab wound to his chest. The knife entered Tudor just below his left clavicle to a depth of five inches and severed the subclavian vein. There was evidence in the trailer that a struggle had taken place.

○ ¶There was conflicting testimony as to Longstreth's condition. The testimony was inconsistent as to whether Longstreth showed signs of injury. The testimony suggested, however, that Longstreth did not appear intoxicated and when she was given a breath analysis test at 6:43 a.m., she had a blood alcohol concentration of .000. Longstreth told the police that she did not

intend to kill Tudor.

○ ¶On January 20, 1998, Longstreth filed notice of her intention to rely upon the affirmative defense of justifiable use of force. On March 5, 1998, after a four-day jury trial, Longstreth was found guilty of the lesser-included offense of negligent homicide.

○ ¶The District Court committed Longstreth to the Montana Department of Corrections for a term of five years, subject to suspension on the condition that Longstreth apply and be accepted for admission to the Department's prerelease diversion program. Longstreth also was sentenced to a consecutive term of two years for the use of a weapon, which was suspended. Longstreth was released on bail on June 2, 1998, pending her appeal.

○ ¶Longstreth rests her appeal on the District Court's instructions regarding her defense of justifiable use of force. Also, Longstreth appeals the District Court's denial of her motion for a directed verdict.

## STANDARD OF REVIEW

■ ¶If the district court's jury instructions, reviewed as a whole, fully and fairly present the law to the jury, then the jury has been properly instructed. *See State v. Stone* (1994), 266 Mont. 345, 349, 880 P.2d 1296, 1299. The test to be applied is whether, when an instruction is considered as a part of the whole body of instructions, the instruction is prejudicial to the appealing party. *See Stone*, 266 Mont. at 350, 880 P.2d at 1299 (citing *State v. Graves* (1981), 191 Mont. 81, 96, 622 P.2d 203, 211-12).

■ ¶We review the district court's denial of a motion for a directed verdict to determine whether the district court abused its discretion. *See State v. Berger*, 1998 MT 170,¶ 25, 298 Mont. 78, ¶ 25, 964 P.2d 725, ¶ 25; *State v. Miller*, 1998 MT 177, ¶ 21, 290 Mont. 97, ¶ 21, 966 P.2d 721, ¶ 21. A directed verdict of acquittal is appropriate only when no evidence exists to support a guilty verdict. *See State v. Clay*, 1998 MT 244, ¶ 29, 967 P.2d 370, ¶ 29. We find no abuse of discretion if, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Berger*, ¶ 25; *Miller*, ¶ 21.

## ISSUE 1

- ¶Did the District Court's instructions on justifiable use of force deny Longstreth her right to due process?

- ¶After instructing the jury on the statutory elements of deliberate, mitigated, and negligent homicide, the District Court further instructed the jury on Longstreth's defense of justifiable use of force. Longstreth challenges several of these instructions, essentially arguing that the instructions improperly allocate the burden of proof.

- ¶She focuses on Instruction Nos. 18 and 19, in particular. Instruction No. 18, offered as State's Proposed Instruction No. 9, provided:

The defendant has the burden of producing sufficient evidence of justification in the use of force to raise a reasonable doubt of her guilt. You are to consider the following requirements of the law in determining whether the use of force claimed by defendant was justified:

(1) The defendant must not be the aggressor;

(2) The danger of harm of the defendant must be a present one and not

made by a person without the present ability to carry out the threat;

(3) The force threatened against the defendant must be unlawful;

(4) The defendant must actually believe that the danger exists, that is, use

of force by her is necessary to avert the danger and that the kind and

amount of force which defendant uses is necessary; and

(5) The defendant's belief, in each of the aspects described, is reasonable

even if it is mistaken.

You are further advised that even if you determine the use of force by defendant was not justified, the state still has the duty to prove each of the elements of the crime charged beyond a reasonable doubt.

Instruction No. 19, offered as State's Proposed Instruction No. 8, provided:

The defense of justifiable use of force is an affirmative defense and the defendant has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of her guilt.

If you find that she was justified in the use of force, you must find her not guilty.

- ¶At the settlement of instructions, Longstreth objected to these instructions contending that they were prejudicial, illogical and that they prevented her from fairly presenting her theory of the case because they failed to properly allocate the burden on the State to prove an absence of

justification beyond a reasonable doubt. Although Longstreth does not contest her own burden of producing sufficient evidence to support a finding of justification, she contends that the State should have the burden to prove that a justifiable use of force did not exist. Longstreth contends that in the absence of the State's burden, she was denied her right to due process of law.

- ¶The State first argues that Longstreth failed to object to both instructions. Our review of the transcript, however, discloses that, although somewhat confusing, the defendant sufficiently objected to the instructions. Thus, we conclude that Longstreth has sufficiently preserved this issue for appeal.

- ¶The State next contends on a substantive basis that Longstreth's burden of proof argument lacks any support under Montana case law. Indeed, this Court has consistently stated over the years that justifiable use of force is an affirmative defense and that only the defendant has the burden of producing sufficient evidence to raise a reasonable doubt of her guilt. *See, e.g., Miller*, ¶ 5; *State v. Daniels* (1984), 210 Mont. 1, 16, 682 P.2d 173, 181; *Graves*, 191 Mont. at 92-93, 622 P.2d at 210; *State v. Cooper* (1979), 180 Mont. 68, 72-73, 589 P.2d 133, 136; *State v. Grady* (1975), 166 Mont. 168, 175, 531 P.2d 681, 684. In *Daniels*, 210 Mont. at 15-16, 682 P.2d at 181, we held that as an affirmative defense, justifiable use of force requires the defendant to produce sufficient evidence on the issue to raise a reasonable doubt of his guilt and that the State's burden is to prove beyond a reasonable doubt the elements of the offense charged, which does not include the absence of justification.

- ¶Longstreth cites *State v. Azure* (1979), 181 Mont. 47, 591 P.2d 1125, and *Graves*, and argues that our cases have confused this issue. In *Azure*, 181 Mont. at 54, 591 P.2d at 1130, we stated the jury should be instructed that the State must prove the absence of justification beyond a reasonable doubt; however, we sustained the refusal of an instruction

to that effect because other instructions had covered the subject. Subsequently in *Graves*, 191 Mont. at 92-93, 622 P.2d at 210, this Court referred to the statement made in *Azure* without disavowing it, but also recognized that justifiable use of force is an affirmative defense rather than an element of deliberate homicide.

- ¶We addressed both of these cases in our opinion in *Daniels* and clarified any uncertainties they may have caused. More recently in *Miller*, ¶ 23, we reiterated that although the State retains the burden of proving the underlying offense beyond a reasonable doubt, the defendant who raises justifiable use of force assumes the burden of producing sufficient evidence on the issues to raise a reasonable doubt of his guilt. Although Longstreth and *amicus* urge us to revisit the propriety of our prior case law in regard to affirmative defenses and the relative burdens of the state and the defendant, we are not inclined to do so at this time. We conclude that the District Court committed no error in its use of Instructions Nos. 18 and 19.

- ¶Closely related to Longstreth's objections to Instructions Nos. 18 and 19 is her objection to Instruction No. 14(a). Instruction No. 14(a) provided:

In a deliberate homicide, knowledge or purpose may be inferred from the fact that the accused committed a homicide and no circumstances of mitigation, excuse or justification appear.

The authority for this instruction is § 45-5-112, MCA. Longstreth asserts that by allowing the jury to make an inference as to her mental state as a result of her own failure to produce sufficient evidence to establish a justification, and without an instruction that the State had the burden to prove an absence of justification, Instruction No. 14(a) impermissibly shifted the burden of proving an essential element of the crime charged to her. She relies on

two United States Supreme Court cases for the proposition that the burden of proof may not shift to the defendant by allowing the jury to presume or infer the presence of one element based simply upon proof of another. *See Francis v. Franklin* (1985), 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344; *Patterson v. New York* (1977), 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281. She also relies on *State v. Woods* (1983), 203 Mont. 401, 414, 662 P.2d 579, 585, where we recognized that in determining the effect of an instruction, the appropriate question is whether that instruction has the effect of allocating to the defendant some part of the burden of proof that properly rests on the State throughout the trial. To remedy the alleged burden of proof problem prompted by Instruction No. 14(a), Longstreth again suggests that the District Court should have instructed the jury that the State has the burden to prove the absence of justification.

- ¶In *State v. Coleman* (1979), 185 Mont. 299, 394, 605 P.2d 1000, 1052, *cert. denied*, 446 U.S. 970, 100 S. Ct. 2952, 64 L. Ed. 2d 831 (1980), *reh'g denied*, 448 U.S. 914, 101 S. Ct. 34, 65 L. Ed. 2d 1177 (1980), we pointed out that § 45-5-112, MCA, allows for a permissive inference by the jury rather than a mandatory inference. We stated that the critical question is whether the permitted inference, when read with the other instructions in the case, relieves the State of its burden of proof to convict the accused beyond a reasonable doubt. *See Coleman*, 185 Mont. at 394, 605 P.2d at 1052. Just as in *Coleman*, the District Court here instructed the jury that the State had the burden of proving the guilt of the defendant on the charge beyond a reasonable doubt and that the defendant was presumed innocent until otherwise proven guilty. Our review of the instructions when considered in their entirety did not effectively relieve the State of its obligation to prove every element of

the offense charged.

- ¶We have repeatedly followed the rationale of *Coleman* in cases such as *Woods*, 203 Mont. at 412-15, 662 P.2d at 585-86; *State v. Gratzer* (1984), 209 Mont. 308, 317, 682 P.2d 141, 145-46; and *State v. Moore* (1994), 268 Mont. 20, 64, 885 P.2d 457, 484-85. In *Gratzer*, 209 Mont. at 317, 682 P.2d at 145-46, a mitigated homicide case, we specifically stated that "to require the State in a deliberate homicide case to negate mitigation beyond a reasonable doubt before the jury may infer purpose or knowledge" was not necessary. In our view, this statement applies equally to the State's burden on the issue of justification.

- ¶We have previously stated that a defendant's burden of presenting evidence of justifiable use of force as an affirmative defense does not unconstitutionally place a burden of proof upon the defendant. *See State v. Warnick* (1982), 202 Mont. 120, 130, 656 P.2d 190, 195. In *State v. Lopez* (1980), 185 Mont. 187, 195-96, 605 P.2d 178, 183, we recognized the following language written by the United States Supreme Court:

[T]he long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant. This did not lead to such abuses or to such widespread redefinition of crime and reduction of the prosecution's burden that a new constitutional rule was required . . . . Nor does the fact that a majority of the States have now assumed the burden of disproving affirmative defenses for whatever reasons mean that those States that strike a different balance are in violation of the Constitution. *Patterson*, 432 U. S. at 211, 97 S. Ct. at 2327, 53 L. Ed. d at 292-93.

We also recognized the language in *Leland v. Oregon* (1952), 343 U.S. 790, 794-96, 72 S. Ct. 1002, 1006, 96 L. Ed. 1302, 1306-1307, in which the United States Supreme Court upheld the defendant's burden in regard to an affirmative defense so long as the instructions given to the jury made it clear that the burden of proof of guilt, and all the necessary elements of guilt, were placed squarely on the State.

- ¶ In the final analysis, we conclude that the jury was properly instructed on the law of justifiable use of force, and that Longstreth was not denied her right to due process.

## ISSUE 2

- ¶Did the District Court err when it denied Longstreth's motion for a directed verdict?
- ¶At the close of the State's case, Longstreth moved for a directed verdict, arguing that the State failed to prove the necessary elements of deliberate homicide, which was the only crime for which she was charged. Longstreth asserts that the State failed to introduce evidence necessary to establish that she possessed the mental state of purpose or knowledge to cause the death of another.
- ¶In support of her argument, Longstreth again cites to § 45-5-112, MCA. Longstreth argues that the State was required to prove its case circumstantially through the inference allowed by § 45-5-112, MCA, which provides that, in a deliberate homicide case, an accused's mental state can be

inferred only when there is no evidence of mitigation, excuse, or justification. Since the State's case-in-chief established proof of the abuse Longstreth suffered, the danger she faced, and her justification for killing Tudor, Longstreth argues that her mental state could not have been inferred and that the jury should not have been able to consider any of the other circumstantial evidence presented.

- ¶The State responds that although the evidence it presented could have supported Longstreth's justification defense, § 45-5-112, MCA, does not preclude the jury from considering other circumstantial evidence that bears on the issue of Longstreth's mental state. In support of its argument, the State cites § 45-2-103(3), MCA, which allows a jury to infer the existence of a mental state from the acts of the accused and the facts and circumstances connected with the offense. The State argues that § 45-5-112, MCA, does not render § 45-2-103 (3), MCA, inoperative.

- ¶Section 45-5-112, MCA, permits the jury in a deliberate homicide case to infer a defendant's mental state so long as two conditions are met: (1) the accused committed a homicide; and (2) no circumstances of mitigation, excuse, or justification appear. There is nothing in § 45-5-112, MCA, however, which suggests that knowledge or purpose may be inferred only in the absence of evidence of justification. Furthermore,

we have held that the ultimate determination of mental state is left to the finder of fact. *See Moore*, 268 Mont. at 64, 885 P.2d at 484. As we previously have stated, "criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence." *State v. Ortega* (1984), 209 Mont. 285, 289, 679 P.2d 793, 795 (citation omitted).

- ¶We conclude that all the evidence the State presented, both direct and circumstantial, was properly considered by the jury. Therefore, the District Court did not err when it denied Longstreth's motion for a directed verdict.

- ¶Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.