No. 82-188

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

                  Plaintiff and Respondent,

vs.

MILO WARNICK,

                  Defendant and Appellant.

---

Appeal from:  District Court of the Sixth Judicial District,
             In and for the County of Park
             Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Moses Law Firm, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Bruce E. Becker, County Attorney, Livingston, Montana

---

                  Submitted on briefs: November 5, 1982

                         Decided: December 29, 1982

Filed:  DEC 29 1982

Thomas J. Kearney   Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from his conviction of aggravated assault and sentence in the Sixth Judicial District Court in Park County. We affirm.

Initially, it is appropriate that we address a few remarks on the subject of defendant's appeal. Appellant has "shotgunned" seven issues for our consideration on appeal, several of which are totally devoid of merit, apparently in hopes of finding one or two that will hit the mark and constitute sufficient grounds for reversal. We will confine any breadth of discussion to those questions raising sufficiently meritorious claims to warrant our in-depth review.

Defendant picked up Linda, his former wife (with whom he was sharing a house in Livingston), from her work at the Livingston Convalescent Center at about 10:30 p.m. on July 23, 1981. They traveled to their home where she changed her clothes and then proceeded to her sister's house to visit another sister (Debby Jetty) who was in town. Defendant did not accompany her but went to bed.

Linda returned home about fifteen minutes after midnight and defendant woke up and asked her if she was planning on returning to him after her upcoming trip to North Dakota. She said she was planning to do so, but defendant got out of bed and started arguing with her. The two argued about different subjects for some time after this and during the argument Linda asked to leave several times but defendant refused to let her. Defendant also held Linda on the kitchen floor and hit her head against the floor.

During the argument the phone rang. Defendant picked up the receiver and the person making the call then hung up.

-2-

A little later the phone rang again, and the procedure was repeated. The phone later rang a third time, and this time the defendant recognized that one of Linda's sisters was calling. He yelled an obscenity into the receiver and hung up.

After the third phone call defendant went to the bedroom and retrieved his .22 caliber rifle. Defendant testified that he had received previous beatings at the hands of Linda's relatives and was afraid that they might be coming to his house to do this again. Defendant requested his wife to call her relatives and tell them not to come, but she refused, saying they would not be coming to the house. Defendant then fired several rounds which hit the bathroom door. According to his testimony, defendant did this to show Linda he was serious and what would happen if her relatives did pay a visit. At one point in the argument, Linda was sitting on the couch and defendant pulled her off the couch and threw an easy chair at her.

Unknown to defendant, Debby Jetty had called the Livingston police dispatcher and told the dispatcher that defendant was beating his wife. Sgt. George Bryce and Officer Robert Stanley responded to the dispatcher's message and approached defendant's house. After exiting their automobiles they walked to defendant's front door and stood on each side of the door. Sgt. Bryce then knocked on the door. Defendant testified he could see heads at the bottom of the glass in the door.

Thinking the people outside were Linda's relatives, defendant fired six shots at the top of the door to scare them away. The lowest bullet hole was seven feet above the

ground and the highest was seven feet three inches above the ground. Sgt. Bryce was struck by debris on the right side of his face. The officers then retreated to safer positions under cover.

Meanwhile defendant, not knowing the people he had just fired upon were police officers, called the police and requested the dispatcher to send some officers to his house. The dispatcher replied that someone had already called and that officers were on their way. Sgt. Bryce also notified the dispatcher that they had been fired upon and requested assistance.

The dispatcher then called defendant and told him that the officers were already there and were the ones who had been knocking on the door. The dispatcher informed defendant that he was to leave his guns in the house and walk outside with his hands in the air which he did.

On August 11, 1981, the Deputy Park County Attorney filed an information charging defendant with aggravated assault with the following language:

> "On or about July 24, 1981, in Park County, Montana, the defendant, at approximately 12:42 A.M., did purposely or knowingly fire a .22 caliber rifle through a door which had just been knocked on by officers George Bryce and Robert Stanley. Said act was done by the defendant purposely or knowingly and caused reasonable apprehension or serious bodily injury by use of a weapon."

Following a trial beginning February 4, 1982, defendant was convicted and on March 9, 1982, was sentenced to ten years in the Montana State Prison with eight years suspended. Defendant was also sentenced to two years for using a dangerous weapon in the commission of an offense (section 46-18-221, MCA), to run consecutively with the

-4-

first sentence.

Defendant appeals and presents seven issues for our review:

1. Was evidence of other crimes erroneously admitted in evidence?

2. Were certain pictures erroneously admitted in evidence?

3. Were the alternative charge and instructions erroneous?

4. Is justifiable force in self-defense an affirmative defense?

5. Did certain instructions bar consideration of the defense of justifiable use of force?

6. Could rational triers of fact find beyond a reasonable doubt that defendant's actions were justified?

7. Does the evidence support the sentence imposed?

In the first issue, defendant refers us to State v. Just (1979), ____ Mont. ____, 602 P.2d 957, 36 St.Rep. 1649, wherein we discussed how evidence of other crimes should be treated:

> "We feel these procedures should be standardized in cases of this type and therefore hold that the following procedures shall be followed without retroactive application insofar as they are new:
>
> "(a) Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. The procedures set forth in section 46-18-503 MCA should serve as guidelines for the form and content of such notice. Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.
>
> "(b) At the time of the introduction of such evidence, the trial court shall

explain to the jury the purpose of such
evidence and shall admonish it to weigh
the evidence only for such purposes.

"(c) In its final charge, the court
should instruct the jury in unequivocal
terms that such evidence was received
only for the limited purposes earlier
stated and that the defendant is not
being tried and may not be convicted for
any offense except that charged, warning
them that to convict for other offenses
may result in unjust double punishment."
____ Mont. at ____, 602 P.2d at 963-964,
36 St.Rep. at 1657-1658.

Appellant charges that the Just standard was violated
on several occasions at trial--the testimony regarding the
assault on Linda, the State's offering a revolver into evi-
dence which was found on defendant's premises, the testimony
about damage occurring to the house and the testimony as to
an assault by defendant on his stepdaughter.

We initially note that the testimony regarding the
assault on Linda and the damage occurring to the house and
the revolver were not objected to at trial which forecloses
our review on appeal. State v. Patton (1979), ____ Mont.
____, 600 P.2d 194, 36 St.Rep. 1731. Additionally, we fail
to see how possession of the revolver or defendant's causing
damage to his own house constitute a crime, and defendant
fails to enlighten us on this point in his brief. Appellant
argues in his reply brief that the failure to object was not
fatal because this constitutes plain error. However, there
was no error here.

Regarding the assault by defendant on his stepdaughter
the transcript shows the following testimony by the defen-
dant under questioning by the prosecutor:

"A. Okay. That day-- Let's see-- We
had gone home and I was spanking the girl
for lying to me. And I did use a belt.
And while I was spanking her over my lap,

-6-

well, of course she was fighting me. And
she did get a black eye.

"Q. Were there charges brought against
you as a result of that?

"MR. DOUGLASS [Defendant's Attorney]:
Your Honor, Object to questions of that
nature.

"THE COURT: I will sustain that as to
charges."

Later, before settling instructions, defendant's attorney
moved for a mistrial on the grounds that the above testimony
planted the seed of defendant's prior crimes in the jurors'
minds which could not be eliminated without a new trial.

The District Court correctly denied defendant's mis-
trial motion. It is evident from the above portion of the
transcript that defendant did not testify about any prior
crime because the question regarding charges being brought
against defendant was never answered or alluded to again.
In Just, upon which defendant heavily relies, the victim
testified regarding several previous sexual offenses com-
mitted against her by the defendant. Here, defendant never
did testify about any previous crimes allegedly committed by
him and thus there is no parallel between Just and this case
which would make the Just holding appropriate here.

In the second issue defendant assigns as error the
admission of seven photographs taken by Officer Stanley on
the night of the incident in question. Several of these
photographs show where the spent .22 shells fell and the
location of the bullet holes in the bathroom door and front
door of the house. Exhibit No. 26 is a view of the edge of
the bathroom door showing how one bullet nicked the edge of
the door.

On all but one of these pictures, Officer Stanley

-7-

circled with a black pen the location of the bullet holes and spent cartridges and made notations on the backs of all of them, indicating what each showed. Defendant objects to these pictures because they do not accurately portray the scene at the time, i.e., the circles were drawn on the pictures at a later time. Defendant's objection to Exhibit No. 26, on the grounds that it did not show the door in the same condition as it was at the time of the incident, is apparently based on the following portion of the transcript:

"MR. DOUGLASS: Officer Stanley, referring specifically to 26, is that the position that the door was in when you first entered the residence? A. I really don't-- I don't think so, but I am not sure. I can't recall now.

"MR. DOUGLASS: Would your recollection be that it was open wider than that? A. I believe it was, yes.

"MR. DOUGLASS: I would object to 26. I think the same objection, first, it's been marked upon, that I objected to before. Secondly, it does not accurately depict the scene as it was found."

These contentions border on the ludicrous. Officer Stanley testified that writing notations on the back of the photographs is standard police procedure. A .22 bullet does not leave a very large hole nor is the cartridge very big, and if the circles had not been made, it would be difficult indeed to determine why the pictures were taken. We see no reason why the admission of the picture showing the bathroom door closed more than it had been at the time of the police entry into the house prejudiced the defendant in any way.

Moreover, the law in the Montana is that trial courts have wide discretion in admitting photographs, Brown v. North American Mfg. Co. (1978), 176 Mont. 98, 576 P.2d 711. See also, State v. Hoffman (1982), ____ Mont. ___, 639 P.2d

507, 39 St.Rep. 79 (pathologist's color slides were properly admitted); and State v. Warrick (1968), 152 Mont. 94, 446 P.2d 916 (color photographs were properly admitted).

In State v. Lang (1976), 197 Neb. 47, 246 N.W.2d 608, investigating officers took a picture of two marks on a liquor store wall which were probably caused by a ricocheting bullet, after a melee in a parking lot next to the liquor store. The officers circled the marks on the photograph and the Supreme Court of Nebraska found the pictures were properly admitted at trial. We similarly so hold here.

In the third issue defendant contends he was denied a unanimous jury verdict by the language of the information and jury instructions which were worded in the alternative by use of the word "or." Defendant first points to the information which states that defendant "purposely or knowingly" fired the rifle, that such act was done "purposely or knowingly" and caused "reasonable apprehension or serious bodily injury." The jury instructions which, according to defendant, contain a similar fault are as follows: No. 12 which stated in part, "[p]urposely or knowingly causing reasonable apprehension of serious bodily injury is an element of the offense of AGGRAVATED ASSAULT"; No. 13 which stated in part, "[t]o sustain the charge of AGGRAVATED ASSAULT, the State must prove that the defendant, MILO WARNICK, purposely or knowingly caused reasonable apprehension of serious injury in another human being with a weapon"; No. 14 which provided, "[t]o sustain the charge of AGGRAVATED ASSAULT, the State must prove that each element of the offense was done purposely or knowingly"; and No. 21 which provided in part, "[a] person commits the offense of

-9-

ASSAULT if he: (1) purposely or knowingly causes bodily injury to another; or (2) negligently causes bodily injury to another with a weapon; or (3) purposely or knowingly causes reasonable apprehension of bodily injury in another." For example, defendant states that Instruction No. 13 allowed the jury to find defendant guilty if only one-half of the jurors found that he acted "purposely" while the other half found that he acted "knowingly."

We disagree. Initially we note that defendant did not object to Instruction Nos. 14 and 21 thus preserving no basis for appellate review of these instructions. State v. Powers et al. (1982), ____ Mont. ____, 645 P.2d 1357, 39 St.Rep. 989.

We also note that we have rejected this unanimous jury verdict contention on two previous occasions, McKenzie v. Osborne (1981), ____ Mont. ___, 640 P.2d 368, 38 St.Rep. 1745, and Fitzpatrick v. State (1981), ___ Mont. ____, 638 P.2d 1002, 38 St.Rep. 1448. Defendant here cites two cases, State v. Green (1980), 94 Wash.2d 216, 616 P.2d 628, and United States v. Gipson (5th Cir. 1977), 553 F.2d 453, whose application we rejected in McKenzie and Fitzpatrick and whose application we similarly reject here. In rejecting the reasoning of Gipson and Green, the McKenzie and Fitzpatrick courts discussed two pivotal issues: (1) that the jury had been instructed as to the requirement of a unanimous verdict, and (2) that each alternative presented to the jury was supported by substantial evidence. We hold that these requirements were met here.

In Instruction No. 30 the Court admonished the jury that a unanimous verdict was required with the following

words:

> ". . . all twelve (12) jurors must agree in order to return either a verdict of guilty or not guilty. To do so, it is necessary that you consider the crime of AGGRAVATED ASSAULT, first, and that all twelve of you find the defendant either guilty or not guilty of that charge. . ."

Defendant points out that the information herein stated that defendant caused "reasonable apprehension or serious bodily injury by use of a weapon." (Emphasis added.) The statute cited in the information, section 45-5-202(1)(c), MCA, reads, "reasonable apprehension of serious bodily injury . . . by use of a weapon." (Emphasis added.) As shown by Instruction Nos. 12 and 13 above, the jury was instructed on two different occasions that reasonable apprehension of serious bodily injury was the element of aggravated assault (Instruction No. 15 also stated that a person commits the offense of aggravated assault if he purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon).

Here the defendant shot six times at a door where people (the tops of whose heads he had seen through the glass windows in the door) had just previously knocked. The defendant testified that he wanted to scare those people away. We find that there is substantial evidence to support the alternatives of purposely or knowingly set forth in the instructions. There is substantial evidence indicating that it was defendant's conscious object to cause a reasonable apprehension of serious bodily injury in those outside the door (thus fitting within the definition of "purposely"-- section 45-2-101(58), MCA) and defendant was aware that it was highly probable that this result would be caused by his

-11-

conduct (thus fitting within the definition of "knowingly"--section 45-2-101(33), MCA).

In the fourth issue, defendant cites section 45-3-115, MCA, which provides:

> "<u>Affirmative defense</u>. A defense of justifiable use of force based on the provisions of this part is an affirmative defense."

Defendant then argues in rambling fashion that somehow section 45-3-115, MCA, violates his due process rights because defendant had the burden of proving he did not commit the crime charged. We have previously stated that because justifiable use of force is an affirmative defense, there is no constitutional prohibition against placing the burden of proof on the defendant. State v. Graves (1981), _____ Mont. _____, 622 P.2d 203, 38 St.Rep. 9.

The jury here was instructed as follows:

> "You are instructed that a defense of justifiable use of force is an affirmative defense and that the defendant has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt."

This instruction is in keeping with section 45-3-115, MCA, and State v. Grady (1975), 166 Mont. 168, 531 P.2d 681.

Defendant has had two chances, in his initial brief and in his reply brief, to put forth some kind of understandable, coherent argument with supporting case law as to how defendant's rights here were prejudiced in some manner. Defendant has failed to do this, and we refuse therefore to consider this matter further.

Defendant fares no better in his fifth issue. Defendant claims that certain instructions that were given failed to permit the jury to fully and properly consider the issue

-12-

of justified use of force by the defendant. Defendant then states that when the instructions are considered together the jury could well have found in defendant's favor as a factual issue and found that he was factually justified in his action but still, in referring to these instructions, find him guilty.

Defendant does not set forth any reasoned effort supporting these claims or incorporate any language in the instructions into an explanation of why defendant's claims are justified. We are not about to waste judicial resources in attempting to determine what defendant is driving at here when it has not been expressed clearly in the briefs.

In the sixth issue defendant takes the position that a review of the entire record in this cause would show that no rational triers of fact could here have found beyond a reasonable doubt that defendant's actions were not justified as a matter of self-defense. In support of this standard of review, defendant cites Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, and Pilon v. Bordenkircher (1979), 444 U.S. 1, 100 S.Ct. 7, 62 L.Ed.2d 1.

However, neither of these cases is on point because they deal with the standard of review that a federal district court will apply when a prisoner applies for habeas corpus relief from a state court decision. That this is the scope of these two cases is amply borne out by the following statements:

> ". . . The question in this case is what standard is to be applied in a federal habeas corpus proceeding when the claim is made that a person has been convicted in a state court upon insufficient evidence." Jackson, 443 U.S. at 309, 99 S.Ct. at 2783, 61 L.Ed.2d at 567.

-13-

"We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254--if the settled procedural prerequisites for such a claim have otherwise been satisfied--the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324, 99 S.Ct. at 2791-2792, 61 L.Ed.2d at 576-577.

". . . An earlier decision had made clear that the Due Process Clause of the Fourteenth Amendment prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. In re Winship, 397 U.S. 358 (1970). The Court in Jackson held that this constitutional requirement can be effectuated only if a federal habeas corpus court, in assessing the sufficiency of the evidence to support a state-court conviction, inquires 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319 (emphasis omitted)." Pilon, 444 U.S. at 2, 100 S.Ct. at 8, 62 L.E.2d at 3.

Obviously the appeal to this Court from the District Court is not a petition for a writ of habeas corpus in a federal court to question the validity of a state court conviction. The cases cited and consequently the arguments marshalled by appellant are inapposite to this case, given its present procedural stance.

In the final assignment of error, defendant takes issue with the sentence imposed by the District Court. Defendant here was sentenced to ten years with eight years suspended and to two years for using a dangerous weapon in the commission of an offense, to run consecutively with the first sentence. Section 45-5-202(2), MCA, states that a person convicted of aggravated assault shall be imprisoned for a minimum of two years and a maximum of twenty years.

-14-

Section 46-18-221(1), MCA, mandates that a person who has used a firearm during the commission of an offense shall be sentenced to at least two more years in the state prison.

Defendant does not question the legality of his sentence but only its equity. Such concerns should be addressed to the Sentence Review Division, section 46-18-901 et seq., MCA. See, State v. Hubbard (1982), ____ Mont. ____, 649 P.2d 1331, 39 St.Rep. 1608.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices