

DA 10-0178

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 35

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

TYRONE PAYNE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 09-174
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joslyn Hunt, Chief Appellate Defender, Garrett R. Norcott, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

            Fred R. Van Valkenburg, Missoula County Attorney, Jason Marks,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  January 12, 2011

Decided:  March 1, 2011

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      After moving from Connecticut to Montana, Tyrone Payne failed to register with the Montana sexual offender registry as required by law.  He was arrested and charged with felony failure to register.  Following a jury trial, he was convicted.  Payne challenges the sufficiency of the State's evidence, the admission of hearsay evidence, and the appropriateness of certain prosecutor remarks during closing argument.  We affirm.

## ISSUES

¶2      A restatement of the issues on appeal is:

¶3      Did the District Court err in denying Payne's motion to dismiss for insufficient evidence?

¶4      Did the District Court abuse its discretion when it allowed hearsay evidence over Payne's objection?

¶5      Did the prosecutor invade the province of the jury by making remarks that constituted comments on the evidence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6      Prior to moving to Missoula, Montana, Tyrone Payne lived in Connecticut where he had been registered with that state's sexual offender registry since January 1999.  Upon relocating to Missoula at some time prior to December 2008, Payne did not register with the Montana sexual offender registry nor did he notify the Connecticut registry of his relocation.

¶7      On March 16, 2009, Payne was stopped in Missoula on a traffic violation.  Officer Franke was one of the two officers participating in the stop.  It is unclear from the

2

record exactly what discussions took place during this encounter because Payne's and Franke's testimonies are in direct conflict. What can be discerned is that during the traffic stop, the officers learned that Payne was a registered sex offender in Connecticut. Franke claims to have asked Payne if he was registered in Montana and that Payne told him that Connecticut authorities advised he did not have to register in Montana. Payne claims no such discussion occurred. However, during this traffic stop, Franke contacted Detective Merifield of the Missoula Police Department and asked her to investigate whether Payne was required to register in Montana and whether he had done so. Payne was not arrested that night for failure to comply with Montana's sexual offender registration laws.

¶8 Payne claims that on March 21, Franke found him in a bar and ordered him outside for questioning about his failure to register in Montana. Payne states he told Franke that his failure to register had not been a problem during their encounter on March 16 and if he is supposed to register, just tell him. According to Payne, Franke told him to "figure it out." Franke testified that he does not specifically recall this encounter. He recalls, however, that within a few days of his March 16 message to Merifield, Merifield got in touch with him and told him that Payne was required to register in Montana. On March 24, Franke found Payne and arrested him for felony failure to register. The Information was filed on April 8, 2009. On April 21, Payne entered a not guilty plea.

¶9 On September 9, 2009, Payne filed a stipulation that provided, among other things, that the jury would be told that he (Payne) had a duty to register in Connecticut and a duty to register in Montana but would not be told any of the details of the

3

underlying offense. The stipulation also informed the jury that at the time of his arrest in Montana there was no arrest warrant for Payne out of Connecticut.

¶10    Also on September 9, 2009, Payne filed a motion in limine requesting that the District Court preclude from evidence a document provided by the State of Connecticut Department of Public Safety. This document consisted of two pages—the first page was the Sex Offender Advisement of Registration Requirements signed by Payne on May 30, 2008, and the second page was a notice that Payne was not in compliance with Connecticut law because he had failed to confirm his address as of September 23, 2008. Payne asserted that the evidence should be precluded based on hearsay, violation of the confrontation clause, and surprise. The State objected to the motion.

¶11    The following day, just prior to the commencement of Payne's trial and outside the presence of the jury, Payne's motion in limine was discussed and the District Court reserved ruling on it. During the trial but before the court ruled on the motion, the State withdrew its objection and the court subsequently granted Payne's motion.

¶12    Officer Franke and Detective Merifield testified on behalf of the State. Neither Payne nor any other witness testified for the defense. During Merifield's testimony, the prosecutor asked her if she learned during her investigation whether Payne was in compliance with Connecticut registration law. Payne's counsel immediately objected, indicating that his objection "goes to the motion in limine." An unrecorded sidebar occurred after which the District Court overruled Payne's objection and allowed Merifield to continue. She testified that Payne was not in compliance with Connecticut's registration laws.

4

¶13 The jury rendered a unanimous verdict of guilt. Payne filed a timely appeal.

## STANDARDS OF REVIEW

¶14 We review de novo a district court's denial of a motion to dismiss for insufficient evidence. *State v. Ommundson*, 2008 MT 340, ¶ 10, 346 Mont. 263, 194 P.3d 672.

¶15 We review rulings on the admissibility of evidence to determine if the district court abused its broad discretion. *Clark v. Bell*, 2009 MT 390, ¶ 16, 353 Mont. 331, 220 P.3d 650.

## DISCUSSION

¶16 *Did the District Court err in denying Payne's motion to dismiss for insufficient evidence?*

¶17 At the close of the State's case, Payne moved to dismiss the case for insufficient evidence. Having stipulated that he had a duty to register and acknowledging that he had not registered within the time required by statute, Payne argued exclusively that the State failed to prove that he acted "knowingly" when he failed to register in Montana. The District Court denied Payne's motion.

¶18 On appeal, Payne again claims that the State failed to prove an essential element of the crime, i.e., that he "knowingly" failed to register. He argues that jurors were not presented with any evidence of his knowledge of the registration requirement. He also asserts that evidence presented to the jury showed that Officer Franke did not arrest him during their first or second encounters for failing to register because Franke himself was unsure of whether Payne was required to register.

5

¶19     The State claims it presented evidence that Franke did instruct Payne to register. Furthermore it argues that even if Franke had not, "[i]gnorance of the law is no defense in Montana." In other words, the State is not required to prove that Payne had been instructed to register; it need prove only that he knowingly failed to do so. Lastly, the State submits that Payne "knew" the following critical facts: he had previously been a registered sexual offender in Connecticut; he moved from Connecticut to Montana; he did not register in Montana.

¶20     Section 46-23-507, MCA, in relevant part, provides:

> A sexual or violent offender who knowingly fails to register . . . under this part may be sentenced to a term of imprisonment of not more than 5 years or may be fined not more than $10,000, or both.

Under this, and other companion statutes, Payne was obligated to register as an offender in Montana within three days of entering Missoula County. *See* § 46-23-504(1)(c) and (d), MCA. It is undisputed that he failed to do so.

¶21     The criminal state of mind attributed to § 46-23-507, MCA, is "knowingly." Section 45-2-101(35), MCA, provides three definitions of "knowingly." In this case, the relevant definition was given to the jury in the form of a jury instruction by the District Court: "A person acts knowingly with respect to a specific circumstance defined by an offense when the person is aware of that circumstance." The court gave additional jury instructions on purpose and knowledge as well. Payne did not challenge the court's jury instructions, and does not attempt to challenge them here.

¶22     We are persuaded by the State's argument that Payne is presumed to know the law of Montana. For at least a century, it has been the law in Montana that "ignorance of

6

the law is no defense." *State ex rel. Rowe v. District Court*, 44 Mont. 318, 324, 119 P. 1103, 1106 (1911), *superseded by statute on other grounds in State ex rel Shea v. Judicial Standards Comm.*, 198 Mont. 15, 643 P.2d 210 (1982) ("If a person accused of a crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would in most cases result. No system of criminal justice could be sustained with such an element in it to obstruct the course of its administration."). We reiterated this rule in *State v. Trujillo*, 2008 MT 101, ¶ 15, 342 Mont. 319, 180 P.3d 1153, when we held that Trujillo unlawfully trespassed onto another's land despite his assertions that he had not passed through any gates or barriers intended to bar access. Similarly, in *State v. G'Stohl*, 2010 MT 7, ¶ 14, 355 Mont. 43, 223 P.3d 926, we noted that "people are presumed to know the law" and will not be relieved of criminal liability for their failure to comply with it.

¶23 Under this analysis, it was Payne's responsibility to determine if he was required to register with the Montana sexual offender registry. Conversely, it was **not** Franke's duty to tell Payne whether or not he needed to register. Payne knew he was a sexual offender. He knew he registered in Connecticut and was subject to Connecticut's statutes which expressly provide that "[i]f any person who is subject to registration under this section changes such person's address, such person shall, without undue delay, notify the Commissioner of Public Safety in writing of the new address and, if the new address is in another state, such person shall also register with an appropriate agency in that state, provided that state has a registration requirement for such offenders." Conn. Gen. Stat. § 54-252(a). Payne moved to Montana. He knew he did not register with the Montana

7

sexual offender registry. During at least one of his encounters with Franke, the two men discussed Payne's status as a registered offender in Connecticut. While there is conflicting testimony as to whether Franke told Payne he had to register or just asked him whether he had registered, this conversation, at the very least, should have prompted Payne to determine the applicable Montana law. We cannot countenance his failure to do so on the ground that he did not know the law and Franke did not tell him. We conclude the jury had before it sufficient evidence to determine that Payne had "knowingly" failed to register.

¶24    *Did the District Court abuse its discretion when it allowed hearsay evidence over Payne's objection?*

¶25    During the trial, Detective Merifield testified that Payne had been registered with the Connecticut registry but was not, at the time of trial, in compliance with his registration obligations in Connecticut. Payne objected to the testimony on the ground that it violated Payne's previously-granted motion in limine. The District Court overruled Payne's objection and allowed Merifield to continue with the same line of testimony.

¶26    Payne argues on appeal that Merifield's testimony, originally obtained by telephone from a Connecticut authority, was inadmissible "testimonial" hearsay that violated the confrontation clauses of the United States and Montana Constitutions. He claims it was prejudicial and planted "a propensity inference with the jurors."

¶27    The State counters that Payne may not now argue violation of the confrontation clause based upon Merifield's testimony because Payne's trial objection lacked

8

particularity—referring only to his "motion in limine" rather than the confrontation clause specifically. The State further asserts that the purpose of Payne's motion in limine was to exclude from evidence the Connecticut Sex Offender Registry form signed by Payne in May 2008 in which Payne acknowledged, among other things, that if he moved to another state, he had to register with the appropriate registry for that state. The State opines that the motion in limine was "not broadly applicable to exclude any and all information regarding Payne's registration requirements in Connecticut." The State also argues that under *State v. Canon*, 212 Mont. 157, 687 P.2d 705 (1984), *overruled on other grounds, State v. Allen*, 2010 MT 214, 357 Mont. 495, 241 P.3d 1045, Merifield's testimony was not testimonial hearsay.

¶28     Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. M. R. Evid. 801(c). A declarant's statements are presumed testimonial if they are knowingly made to a police officer or government agent. A statement is presumed non-testimonial if the declarant had "objective reason to believe" that the statement served only "to avert or mitigate an imminent or immediate danger" and the agent receiving the statement lacked intent to create evidence. *State v. Mizenko*, 2006 MT 11, ¶ 23, 330 Mont. 299, 127 P.3d 458. "Testimonial hearsay statements are inadmissible unless the declarant is 'unavailable' for trial and the defendant had a prior opportunity for cross-examination." *State v. Spencer*, 2007 MT 245, ¶ 16, 339 Mont. 227, 169 P.3d 384.

¶29     The testimony delivered by Merifield at trial was obtained when she called the Connecticut authorities during her investigation of Payne. The "declarant" in this case is

the Connecticut official with whom Merifield spoke. Presumably, upon reaching "the declarant," Merifield identified herself as a Missoula Police Department detective conducting an investigation and asked about the status of Payne's Connecticut registration. She was told that Payne was a former registrant but that his Connecticut registration was not current. She testified to the same at trial. While Merifield did not repeat the declarant's words verbatim on the witness stand, the fact remains that the statement of the Connecticut official during the inquiry—that Payne was not in compliance with Connecticut registration requirements—was made knowingly to a government official for the purpose of creating evidence, and then presented at trial for the truth of the matter asserted. As such, it falls squarely within the analysis of *Mizenko*. Under these circumstances, Merifield's statements pertaining to Payne's Connecticut registration were testimonial hearsay.

¶30 Relying on *Canon*, the State argues that Merifield's testimony was not testimonial hearsay because she did not on the witness stand repeat any actual statement made by the declarant. In *Canon*, a police officer and an informant were together in a room when the informant knowingly and consensually recorded a telephone conversation with the defendant. *Canon*, 212 Mont. at 163-64, 687 P.2d at 708. At trial, and at a time when the informant was not available, the police officer attempted to testify that because the informant had agreed to tape the defendant, the standard for taping a conversation (i.e., one party to the conversation consents to the recording) was satisfied. *Canon*, 212 Mont. at 163-64, 687 P.2d at 708. Canon challenged the testimony as hearsay arguing that the informant's agreement to tape the conversation was being presented as the truth

10

of the matter asserted. *Canon*, 212 Mont. at 163, 687 P.2d at 708. The *Canon* Court disagreed, however, and ruled that the officer's testimony was not hearsay but merely established that an agreement had been made between the officer and the informant. The Court indicated that the officer "did not testify as to any statement made by [the informant]." *Canon*, 212 Mont. at 164, 687 P.2d at 709. The Court also stated that even had it been hearsay, it was not reversible error based on the informant's subsequent testimony. *Canon*, 212 Mont. at 164, 687 P.2d at 709. We conclude that the holding in *Canon* is narrow and applicable only to the circumstances of that case. It is therefore inapposite.

¶31 As noted above, testimonial hearsay statements may be admitted if the declarant is unavailable for trial and the defendant had a prior opportunity to cross-examine the declarant. This exception does not apply to the case before us. It is undisputed that the State did not attempt to have any Connecticut official testify at trial, and therefore the issue of unavailability is not before us. Moreover, it is clear that Payne had no opportunity to cross-examine the individual with whom Merifield spoke. We therefore conclude the District Court erred in admitting this hearsay statement into evidence.

¶32 Having determined that Merifield's testimony was hearsay, we next examine the State's argument that Payne failed to sufficiently preserve the issue for appeal. As noted above, Payne's motion in limine had two documents attached to it—(1) the Connecticut "Sex Offender Advisement of Registration Requirements" signed by Payne acknowledging his obligation to register in another state should he move, and (2) a Connecticut Sex Offender Registry form indicating that Payne was "not in compliance."

11

Payne sought to keep these documents, and the information they contain, from being introduced in evidence and the District Court granted his motion. Merifield, however, testified directly to the fact that a Connecticut official told her that Payne was not in compliance with Connecticut registry requirements.

¶33    M. R. Evid. 103 provides that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground was not apparent from the context*." (Emphasis added.) Under these circumstances, we conclude Payne's objection to the testimony at trial—"goes to the motion in limine"—was apparent from the context and was sufficient to preserve this issue for appeal.

¶34    We now determine whether the court committed reversible error when it overruled Payne's objection and allowed the challenged testimony.

¶35    In *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735, we stated that the first step in a reversible error analysis requires us to determine whether the error complained of is a "structural" error or a "trial" error. *Van Kirk*, ¶ 37. Structural error affects the "framework within which the trial proceeds," and is automatically reversible. *Van Kirk*, ¶¶ 38-39. Trial error is "that type of error that typically occurs during the presentation of a case to the jury." *Van Kirk*, ¶ 40. "Trial error is not presumptively prejudicial and therefore not automatically reversible." *Van Kirk*, ¶ 40. Rather, it is subject to review under our harmless error statute, § 46-20-701(1), MCA. The admission of Merifield's testimony here is a classic example of a trial error.

12

¶36    Section 46-20-701(1), MCA, establishes:

> Whenever the record on appeal contains any order, ruling, or proceeding of the trial court against the convicted person affecting the convicted person's substantial rights on the appeal of the cause, together with any required objection of the convicted person, the supreme court on that appeal shall consider the orders, rulings, or proceedings and the objections thereto and shall reverse or affirm the cause on the appeal according to the substantial rights of the respective parties, as shown upon the record. A cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial.

¶37    To determine whether the admission of the evidence was prejudicial to Payne we look at whether there is a reasonable possibility that the tainted evidence might have contributed to his conviction. *Van Kirk*, ¶ 42. Following the guidance set forth in *Van Kirk*, we consider whether the inadmissible evidence is proof of an element of the crime for which Payne was charged. "Clearly, if the only evidence tending to prove an element of the crime is tainted, then reversal will be compelled." *Van Kirk*, ¶ 45. However, if the "tainted evidence does **not** go to the proof of an element of the crime charged, and there is no other admissible evidence tending to prove the particular fact at issue, the admission of the tainted evidence will be deemed harmless only if the State demonstrates that no reasonable possibility exists that the admission of the tainted evidence might have contributed to the defendant's conviction." *Van Kirk*, ¶ 46. (Emphasis in original.)

¶38    Applying *Van Kirk's* analysis, Merifield's evidence did not go to an element of Payne's charged offense, as failing to comply with another state's statutes is not an element of the crime with which Payne was charged. No untainted admissible evidence was presented to show that Payne was not in compliance with Connecticut's registration laws. Therefore, for this evidence to be harmless, the State must demonstrate that there

13

was no "reasonable possibility" that the jury relied on Payne's lack of compliance with Connecticut law to convict him of lack of compliance with Montana law.

¶39     The tainted testimony in this case raises a concern that the jurors could have concluded that Payne has a propensity for failing to comply with sexual offender registration laws—in other words, just as he failed to keep his Connecticut registration current, he failed to register in Montana. Payne, however, raised no propensity objection in the District Court. As we have held many times, we will not put a district court in error for failing to address an issue or an argument that was not made before it. *Prescott v. Innovative Res. Group, LLC*, 2010 MT 35, ¶ 14, 355 Mont. 220, 225 P.3d 1253.

¶40     Reviewing the evidence to which Payne stipulated and the facts of this case, we conclude the jury had sufficient admissible evidence before it to support its verdict that Payne "knowingly" failed to register in Montana. For this reason, we conclude the District Court's admission of inadmissible hearsay evidence was harmless error.

¶41     In summary, the court admitted inadmissible testimonial hearsay evidence over a proper trial objection. While this constituted trial error, applying the *Van Kirk* analysis we determine the testimony was not prejudicial to Payne and therefore harmless.

¶42     *Did the prosecutor invade the province of the jury by making remarks during closing argument that constituted comments on the evidence?*

¶43     The prosecutor, during closing arguments, made multiple references that Payne "knew" he had an obligation to register with Montana but failed to do so. Payne argues that such remarks were inappropriate comments on the evidence and prevented Payne from receiving a fair trial. He acknowledges on appeal that he made no contemporaneous

14

objection at the time and asks that this Court exercise plain error review or, alternatively, review the issue as an ineffective assistance of counsel claim. We decline to do so. Payne has failed to demonstrate why plain error review of this issue is required in this case. As we have previously noted, we use the plain error doctrine "sparingly, on a case-by-case basis," and only where failing to review the claimed error "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled in part on other grounds, State v Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. We conclude Payne has not met this threshold.

## CONCLUSION

¶44     For the foregoing reasons, we affirm Payne's conviction.


                                        /S/ PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

15