FILED

03/31/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0302

DA 18-0302

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 75N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WILLIAM DALE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 17-01A
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs:  February 12, 2020

Decided:  March 31, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 William Nathaniel Dale (Dale) appeals his conviction upon jury trial of driving under the influence of alcohol, a felony, challenging evidentiary rulings made by the Eighteenth Judicial District Court, Gallatin County.

¶3 Around midnight on December 23, 2016, Julie and her roommate heard sounds of a revving engine close to their apartment. They had not heard anything unusual prior to hearing the revving sounds. Looking out the window, they saw a truck about twenty feet away, on the lawn in front of their apartment building. It appeared the driver of the truck was attempting to drive from the lawn onto the nearby road, but the truck was stuck. Julie watched through the window for about 30 minutes. The driver, who was the only occupant of the truck, got out of the truck and tried to dig out snow from the tires, and then tried to drive the truck again. Julie saw no other persons in the truck or attempting to free the truck. The driver appeared to notice that Julie and her roommate were watching and knocked on their door. However, they did not open the door. Julie believed the driver was drunk. She called law enforcement to make a report of a possible drunk driver.

¶4 Police responded to the scene and observed a male sitting in the driver's seat of the truck, lying with his head pointed toward the passenger side of the vehicle. The male was

2

asleep or passed out. There was an open beer container behind the driver's seat and several opened alcohol containers in the bed of the truck. Police attempted to make contact with the person in the driver's seat by knocking on the window, yelling, and pounding on the roof of the truck, but they could not arouse him. They then opened the truck door and shook the male, who woke up, but was lethargic. The individual was Dale, and the truck was his. Dale's speech was heavily slurred, his eyes were red and watery, and he acted as if disoriented. Dale said he was waiting for a friend to come, and that his friend, David Taylor (Taylor), had been driving the truck. Officers noted there was only one set of footprints in the snow around the truck, other than their own. It appeared from the footprints that the person had walked back and forth along the truck, and that dirt and snow had been thrown around the yard. Officers noted nothing to indicate another person had been with Dale or around the vehicle. Dale agreed to undergo field sobriety testing and performed poorly on the tests. Officers noted mud on Dale's pants. Dale refused to provide a breath sample, so officers obtained a search warrant for a blood draw, which yielded a blood-alcohol result of 0.182. The State filed an Information charging Dale with felony driving under the influence of alcohol.

¶5 At trial, Dale testified he was uncertain about the events of the evening because "I was highly intoxicated," but maintained he had not driven after drinking heavily at his group's Christmas party that night. He first testified he was not certain which friend had driven his truck, adding, "I attempted to get my truck unstuck, that was in the yard, by digging out around the tires and doing that sort of thing, wondering who was going to be

coming back . . . ." However, later in the trial, Dale testified affirmatively that his friend, David Taylor, had driven the vehicle.

¶6     During the investigation by police, Dale had provided Sergeant Toresdahl of the Bozeman Police Department with the name of Desmond Donnelon, who Dale also suggested was driving the truck that evening. At trial, Toresdahl testified that he had talked to Donnelon by telephone, at which point defense counsel objected to the testimony as hearsay. The District Court ruled that, while Toresdahl could not "tell us what he told you, [] you can tell us what you understood after the phone call." Toresdahl proceeded to testify that "I learned that—I determined that [Donnelon] has not been in the state of Montana." A similar exchange occurred when Toresdahl testified about speaking by telephone with Taylor, and, over defense counsel's objection, Toresdahl was permitted to testify that he determined from this conversation that Taylor "had not been at the scene when Mr. Dale's truck was stuck[.]" During cross-examination, defense counsel questioned Toresdahl about an audio recording of telephone conversations between Dale and Taylor, asking whether Dale had maintained he was not the driver, to which Toresdahl responded affirmatively. Then, on re-direct, Toresdahl stated, over objection, that he had also learned from that recorded conversation Taylor had been in Minnesota on the night in question.

¶7     On appeal, Dale challenges the District Court's rulings on his evidentiary objections to the testimony offered by Toresdahl. "We review rulings on the admissibility of evidence to determine if the district court abused its broad discretion." *State v. Payne*, 2011 MT 35,

4

¶ 15, 359 Mont. 270, 248 P.3d 842 (citing *Clark v. Bell*, 2009 MT 390, ¶ 16, 353 Mont. 331, 220 P.3d 650).[1]

¶8      Dale argues the District Court erred in permitting Toresdahl to testify concerning what he had "determined" from his telephone conversations with Donnelon and Taylor, so long as Toresdahl did not repeat specifically what they had said. The State does not contest that Toresdahl was permitted to offer inadmissible hearsay testimony, but argues the evidence was not reversible error.

¶9      Toresdahl's explanatory testimony about what he "determined" from his telephone conversations with Donnelon and Taylor was inadmissible hearsay, as was the similar hearsay testimony this Court concluded was inadmissible in *Payne*. *See State v. Payne*, ¶ 29 ("While [the testifying officer] did not repeat the declarant's words verbatim on the witness stand, the fact remains that the statement of the [declarant] during the inquiry— that Payne was not in compliance with Connecticut registration requirements . . . [was] presented at trial for the truth of the matter asserted[,]" and was "testimonial hearsay"). However, also as in *Payne*, we conclude the admission of these brief statements was not reversible error under the analysis in *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. *See Payne*, ¶ 40. Under *Van Kirk*, this was a trial error that is reviewed for harmless error. *Van Kirk*, ¶ 40. As Dale acknowledges, the sole contested issue in the case was whether Dale was driving prior to his truck coming to rest in the front lawn of the

---

[1] In his opening brief, Dale also challenged the District Court's application of the 2015 persistent felony offender statute, but withdrew the issue in his reply brief in light of this Court's decision in *State v. Thomas*, 2019 MT 155, 396 Mont. 284, 445 P.3d 777, which was decided after the filing of Dale's opening brief.

apartment building. His identity was an element of the offense. However, beyond the inadmissible statements, there was other significant evidence that Dale was driving the truck, including all of the evidence set forth above. While circumstantial in nature, it was nonetheless proper evidence from which a clear inference could be drawn that Dale was the driver that night, by which the State can demonstrate, and has demonstrated that, qualitatively, "there is no reasonable possibility that [the] inadmissible hearsay evidence might have contributed to the defendant's conviction." *Van Kirk*, ¶¶ 44, 47.

¶10 Finally, although Dale also objects to Toresdahl's reference on redirect to the audio recording of his conversation with Taylor, it was defense counsel who first raised the recording during cross examination of Toresdahl, by asking about Dale's profession of innocence on the recording. After the defense had opened the door, it was not an abuse of discretion for the District Court to permit the State to inquire on redirect about other information Toresdahl heard on the same recording.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON